UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID RENE GUEVARA MARROQUIN,<br>Petitioner,<br>v.<br>WARDEN et al.,<br>Respondents. | CASE NO. 2:26-cv-03265-LK<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner David Rene Guevara Marroquin's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons set forth below, the Court denies the petition.[1]

## I. BACKGROUND

Guevara Marroquin is a native and citizen of Guatemala who entered the United States without inspection or parole at an unknown date and place. Dkt. No. 8 at 2. On June 24, 2026, he was detained "through a joint effort with the Palm Beach County, Florida Sheriff's agency" after

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009).

being stopped for an inoperable brake light. *Id.* The following day, U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") officers encountered Guevara Marroquin at the Palm Beach County Jail and determined that he "appeared to be unlawfully present in the United States" with "no pending claims to U.S. citizenship, legal permanent resident status, or any petitions filed on his behalf." *Id.*

On June 25, 2026, ERO issued Guevara Marroquin a Notice to Appear ("NTA"), charging him as inadmissible to the United States pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. *Id.*[2] Guevara Marroquin was taken into immigration custody on June 26, 2026. Dkt. No. 8 at 2. On July 4, 2026, he was transferred to the Otero County Processing Center in New Mexico. *Id.* He requested a bond hearing, and on July 17, 2026, an immigration judge ("IJ") conducted an individual custody hearing. *Id.* at 2–3. The IJ denied bond in a written order, based on "[m]anner of entry, lack of ties to the community, lack of a viable sponsor, speculative form of relief, previously denied visa and still entered the country." *Id.* at 3; *see also* Dkt. No. 1 at 3. Guevara Marroquin did not appeal that decision, and he remained at the Otero facility through the expiration of his appeal period. Dkt. No. 8 at 3.

On August 11, 2026, Guevara Marroquin appeared in immigration court, and an IJ sustained the charge in the NTA and found him removable. *Id.* On August 27, 2026, he was transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* His immigration case was transferred to Tacoma Immigration Court and set for a master calendar hearing on September 29, 2026. *Id.* at 3–4.

---

[2] The Court does not consider the Declaration of Lawrence Van Daley, Dkt. No. 7, or its attachments because the declaration is not signed under penalty of perjury as required by 28 U.S.C. § 1746.

Guevara Marroquin filed his petition for a writ of habeas corpus on September 11, 2026. Dkt. No. 1. Respondents[3] filed a return. Dkt. No. 6. Guevara Marroquin did not file a traverse.

## II. DISCUSSION

Guevara Marroquin argues that his continued detention is unlawful or arbitrary because "Respondents have continued to detain [him] despite transferring him among facilities in several states and without providing a current, individualized explanation of the necessity of his detention." Dkt. No. 1 at 4–5. He requests "immediate release under reasonable conditions of supervision, or an individualized custody determination, and an order requiring Respondents to disclose the basis for his continued detention and the location and status of his immigration proceedings." *Id.* at 1. Respondents counter that Guevara Marroquin is lawfully detained under section 1226(a), which authorizes his custody, Dkt. No. 6 at 6, and "Congress separately authorized the Attorney General to 'arrange for appropriate places of detention for aliens detained pending removal or a decision on removal,'" *id.* at 5 (quoting 8 U.S.C. § 1231(g)(1)). They also argue that Guevara Marroquin has already had a bond hearing and due process does not require the Court to order release or a new custody hearing. *Id.* at 7.

### A. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Guevara Marroquin Is Lawfully Detained under Section 1226(a)**

Like many petitions before the Court, Guevara Marroquin's petition ignores the statute to which he is subject, and instead essentially insists that due process demands the same procedures no matter which statute applies. *See generally* Dkt. No. 1. But the applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

1. <u>Process Required by the Statute</u>

Guevara Marroquin's petition does not address the statutory basis for his detention. *See generally* Dkt. No. 1. Respondents aver that Guevara Marroquin is subject to detention under 8 U.S.C. § 1226(a). Dkt. No. 6 at 2; *see also* Dkt. No. 8 at 3. The Court agrees with Respondents that Guevara Marroquin is detained under Section 1226(a).

Guevara Marroquin does not discuss the adequacy (or lack thereof) of the procedural safeguards in Section 1226(a) in his petition, and absent any argument to the contrary, the Court assumes that these safeguards suffice for due process purposes. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). The Court accordingly addresses the process required here.

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community

and he is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (B.I.A. 2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

Consistent with the procedures laid out in the implementing regulations for Section 1226(a), *see Rodriguez Diaz v. Garland*, 53 F.4th at 1196–97 (citing 8 C.F.R. §§ 236.1(c)(8), -(d)(1), -(d)(3), 1003.19), Guevara Marroquin had a bond hearing on July 17, 2026, Dkt. No. 8 at 3. He does not contend that he was denied any procedure required by the statute or regulations, so the Court turns to his due process arguments.

2. <u>Due Process Requirements</u>

Guevara Marroquin argues that his detention violates his due process rights because Respondents have not provided "a meaningful and current custody determination" or considered alternatives to detention. Dkt. No. 1 at 5–6. He also contends that the transfers of his custody location have "disrupted his access to counsel, family support, legal documents, and information concerning the status of his removal proceedings." *Id.* at 3. Respondents contend that Guevara Marroquin had a legally sufficient bond hearing, and Section 1226(a) provides authority for his ongoing detention. Dkt. No. 6 at 2, 4–5, 8. They also argue that the statute permits ICE to "arrange

places of detention for [noncitizens] held pending a removal decision," *id.* at 6–7 (citing 8 U.S.C. § 1231(g)(1)), and a "transfer is a change in housing, not a new arrest," *id.* at 7.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

Even assuming without deciding that Guevara Marroquin has a liberty interest in remaining out of custody, he has failed to establish a due process violation. To determine what procedures are constitutionally sufficient to protect petitioners' liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context." 53 F.4th at 1206–07.

Respondents concede that the first factor favors Guevara Marroquin because "[f]reedom from physical restraint is a substantial interest." Dkt. No. 6 at 9; *see also Morrissey v. Brewer*, 408

U.S. 471, 482 (1972). However, Respondents argue that this factor does not favor him "to the degree presented in a stalled or years-long case" because Guevara Marroquin has never had legal status in this country, he has been found removable as charged, and his detention has lasted approximately three months while his immigration proceedings have proceeded expeditiously. Dkt. No. 6 at 9. The Court agrees that this factor does not weigh as heavily in Guevara Marroquin's favor because his detention has not been "prolonged," and he has received a bond hearing and immigration hearings during that time. *See Rodriguez Diaz*, 53 F.4th at 1208 (explaining that to evaluate the first *Mathews* factor, courts consider the time in detention as well as "the process [the petitioner] received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order").

Turning to the second factor, Guevara Marroquin argues that he "has not received a meaningful individualized determination explaining why continued detention remains necessary after his transfer to Washington State." Dkt. No. 1 at 4. He also seeks the disclosure of "the location of his complete immigration file, the court with current jurisdiction over his removal proceedings, all scheduled hearings, and any asserted removal order or removal date." *Id.* Respondents contend that this factor "does not favor additional process" because Guevara Marroquin has already received "an administrative warrant, an initial ICE custody determination, a bond request, an individualized hearing, a reasoned denial, a reserved right to appeal to the BIA, and a regulation that permits another hearing upon a material change in circumstances." Dkt. No. 6 at 9–10 (citing 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(c)(8), 1003.19(b), 1003.19(e), 1003.19(f), 1236.1). They also argue that Guevara Marroquin's disclosure requests do not establish that his custody is unlawful because "[h]abeas corpus tests the lawfulness of custody" rather than compelling records disclosures. *Id.* at 12.

The Court finds that Guevara Marroquin has not shown that he was entitled to a new bond hearing after he was transferred, or that the factors that led to his bond denial, Dkt. No. 1 at 3, were inapplicable in this district. Nor does he assert that "circumstances have changed materially," which would entitle him to a bond redetermination on request. 8 C.F.R. § 1003.19(e). Although Guevara Marroquin argues that his transfers have interfered with his ability to communicate with counsel, Dkt. No. 1 at 5, he does not explain how that is so. Nor is such interference apparent from the record, because Guevara Marroquin remained at the Otero Processing Center from the time he made his bond request through his bond hearing and appeal period. Dkt. No. 8 at 2–3.

In addition, as Respondents note, Dkt. No. 6 at 12–13, Guevara Marroquin has the information his petition claims to lack, including the basis for his detention, his A-number, and where his immigration case is proceeding, Dkt. No. 8 at 4. To the extent that Guevara Marroquin challenges the no bond decision as "based solely on generalized allegations," Dkt. No. 1 at 5, the bond decision he cites shows that the IJ made an individualized determination, *id.* at 3. Guevara Marroquin does not argue that the IJ applied an incorrect legal standard, and this Court "cannot reweigh evidence[.]" *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024). In sum, the record does not reflect a risk of an erroneous deprivation of liberty through the procedures used, and this factor does not weigh in Guevara Marroquin's favor.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The government has an interest in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing [a noncitizen's] ultimate removal," which are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. This factor weighs in favor of the government.

Under *Matthews*, the Court finds that Respondents have provided Guevara Marroquin with the process owed to him under the Due Process Clause and denies his habeas petition. *See, e.g.*, *Martir-Martinez v. Scott*, No. 2:25-cv-02194-LK, 2026 WL 709787, at *4 (W.D. Wash. Mar. 13, 2026) (denying habeas petition when petitioner "has been afforded all the process he is due and does not otherwise point to other statutory grounds to grant immediate release" (citation modified)).

**III. CONCLUSION**

For the foregoing reasons, the Court DENIES Guevara Marroquin's petition. Dkt. No. 1.

Dated this 28th day of October, 2026.

Lauren King
United States District Judge